

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 10 C 3892 | DATE | JAN 3 0 2011 |
| CASE TITLE | Craig Rashaan Lomax (K77112) vs. Officer Christopher Cribb | | |

### DOCKET ENTRY TEXT

Defendant's motion for summary judgment (Dkt. No. 42) is granted. The Clerk is instructed to enter a Rule 58 Judgment in favor of defendant and against plaintiff. Plaintiff shall take nothing. Civil Case Terminated.

■ [ For further details see text below.]    Docketing to mail notices.

### STATEMENT

Pro se plaintiff Craig Rashaan Lomax, presently an inmate at the Menard Correctional Center, brings a civil rights suit pursuant to 42 U.S.C. § 1983 against defendant Cook County Correctional Officer Christopher Cribbs. Plaintiff was stabbed by fellow detainees at the Cook County Jail on July 26, 2007. Plaintiff claims that Cribbs was deliberately indifferent to a known risk of assault. Pending before the Court is plaintiff's motion for summary judgment.

The following factual information is drawn from the parties' Local Rule 56.1 materials and other applicable portions of the record, and is presented in the light most favorable to plaintiff, the non-moving party, with all reasonable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 639 (7th Cir. 2010). Plaintiff has also received the Local Rule 56.2 warning regarding summary judgment, (Dkt. No. 45); *see also Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), and the parties have complied with Local Rule 56.1.

At approximately 8:00 a.m. on July 26, 2007, plaintiff and forty of his fellow detainees were transported to the Cook County Jail's gym for recreation. (Dkt. No. 43 at 2). The gym has a large area to play basketball and a separate weight room. (Dkt. No. 43-4 at 25-26). Detainees can also play cards and chess at the gym. They are traditionally patted down or go through a metal detector before entering the gym. (*Id.* at 28). However, this did not occur on the day at issue and the record does not explain why. (*Id.*).

On the way to the gym, fellow detainee Rhino McNeal told plaintiff that there was a rumor that plaintiff was going to be assaulted during the upcoming exercise period. (*Id.* at 22). McNeal did not say who was going to attack plaintiff or provide any other specifics. (*Id.*). Plaintiff had not been charged with fighting at the Jail for at least four or five years. (*Id.* at 24-25). There had no been no prior threats against him and he did not have the slightest idea why someone would want to attack him. (*Id.* at 34-35).

Plaintiff immediately went to defendant Cribbs to report what he had been told. (*Id.* at 25-26). He asked to speak to a sergeant or to be removed from the gym. (*Id.* at 26). Cribbs told plaintiff to "relax," and

that he would "keep a close eye" on the plaintiff. (*Id.*).

Plaintiff then went on with his normal work-out routine, going into the separate weight room at the gym. (*Id.* at 28). He went to exercise at a weight machine facing a wall when he was rushed from behind by a group of detainees. (*Id.* at 32-33). This occurred just a few minutes after he spoke to Cribbs. (*Id.* at 33). The attackers struck plaintiff in the head, rendering him unconscious, and stabbed him six times in the back. (*Id.* at 34, 38). Plaintiff was taken immediately to Mount Sinai Hospital and stayed there for two days. (Plaintiff does not raise a claim regarding his medical care). Plaintiff does not know why he was attacked, who attacked him, and he has not had additional incidents with these attackers. (*Id.* at 41). Rhino McNeal was also stabbed during the incident.

Plaintiff has brought suit against Cribbs alleging that he was deliberately indifferent because he failed to take any actions to protect him after reporting the information passed onto him by Rhino McNeal. Cribbs' present summary judgment motion argues: (1) plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act; (2) the complaint is untimely under the statute of limitations; and (3) he is entitled to judgment as a matter of law on the merits of the deliberate indifference claim.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). Presented evidence must be competent evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted). Defendant, as the moving party, has the initial burden of showing there is no genuine dispute and he is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If defendant meets this burden, plaintiff must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634). A genuine dispute is one that could change the outcome of the suit, and contains evidence sufficient to allow a reasonable jury to return a favorable verdict for plaintiff. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

Turning to defendant's exhaustion argument, the Prison Litigation Reform Act requires exhaustion of administrative remedies by prisoners wishing to bring suit challenging their prison conditions. 42 U.S.C. § 1997e(a). (Although plaintiff was a detainee at a jail, he is still covered by the PLRA). The exhaustion requirement is an affirmative defense, *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199 (2007)), but it is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Exhaustion of administrative remedies, as required by § 1997e, is a condition precedent to suit in federal court." *Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005) (citing *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)). The jail must be given "a fair and full opportunity" to respond to the grievance. *Woodford*, 548 U.S. at 90. "'To exhaust remedies, a [detainee] must file complaints and appeals in the place, and at the time, the [jail's] administrative rules require.'" *Id.* at 87 (quoting *Pozo v. Mccaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Cribbs' exhaustion argument centers around whether plaintiff filed a required appeal following the

denial of his grievance regarding Cribbs' purported failure to protect him. The Cook County Jail has an established grievance process. (Dkt. No. 43-5 at 4). The detainee is required to write a grievance on the Jail's form and place it in a designated lockbox. (*Id.* at 5). The grievances are collected by the Correctional Rehabilitation Worker (CRW). (*Id.*). The CRW obtains a Grievance Case Number that is placed on the grievance and is used for tracking purposes. (*Id.*). The grievance information is then logged into the Grievance Division Tracking Log. (*Id.* at 6). The CRW is required to notify the detainee of the results when the grievance is decided by the Jail Divisional Superintendent and must also contact the detainee if the grievance is not resolved within thirty days. (*Id.*). The detainee may bring an appeal to the Administrator of Program Services or his designee within fourteen days from receipt of an initial denial of the grievance. (*Id.*). Jail policy requires grievances to be kept on file for five years. (*Id.* at 7).

Cribbs provides an affidavit from John Mueller, an Assistant Administrator for the Department of Program Services at the Jail. (Dkt. No. 43-5 at 2). Mueller attests that he searched the Jail's records for plaintiff's grievances arising from the July 2007 assault. (*Id.*). He states that he discovered only one grievance filed by plaintiff on September 12, 2007. (*Id.*). Plaintiff's grievance was answered on September 21, 2007, but plaintiff failed to submit the required appeal. (*Id.*). Cribbs' position is that plaintiff has not exhausted his claim under the PLRA because he failed to bring the required appeal following the initial denial of the September 2007 grievance.

Plaintiff disputes this version of events. He claims that he filed a grievance on July 29, 2007 (a day after he was released from the hospital and three days after the attack). (Dkt. No. 50 at 3). The grievance was not answered by the Jail. (*Id.* at 3). He then filed the September 12th grievance as his "appeal" as to the unanswered July 29th grievance. (*Id.* at 4). Plaintiff can produce a copy of the September 2007 grievance but cannot produce his copy of the disputed July 2007 grievance. (Dkt. No. 43-4 at 45). He speculates that the disputed July 2007 grievance was thrown away by the Jail. (*Id.*).

During his deposition, plaintiff was asked about the "pink copy" of his July 2007 grievance. (*Id.* at 45-46). There are multiple copies of each grievance form including the pink copy that a detainee may keep for his records. (*Id.*). Plaintiff explained that he did not keep his pink copy because he did not understand at that time that it was his copy to keep. (*Id.*). To support his view that the September 2007 grievance was the appeal from the July 2007 grievance, plaintiff points out that he wrote "this grievance is being appealed" on the September grievance. (*Id.* at 72-73).

There is a swearing contest between the parties — the Jail's records state that there was no July 2007 grievance filed while plaintiff asserts that he did file the July 2007 grievance and believes it was lost by the Jail. Although plaintiff's failure to provide evidentiary support beyond his own testimony is a weakness for him, it does not defeat his position at this stage of the proceedings. The reason being is that the Court must view the evidence in plaintiff's favor and may not enter into credibility determinations. Plaintiff says he submitted the grievance and Cribbs says there is no record for this grievance meaning that the Court should not believe plaintiff. The Court cannot resolve this dispute at summary judgment.

Presuming for purposes of summary judgment that plaintiff did bring the disputed July 2007 grievance and did not receive a response as he claims, the Court cannot conclude that plaintiff failed to exhaust his administrative remedies under the PLRA. Plaintiff is excused from exhausting his claim through the jail grievance process when that process is unavailable. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An "unavailable" grievance process occurs when correctional officials fail to respond to a grievance. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

10C3892 Craig Rashaan Lomax (K77112) vs. Officer Christopher Cribb

Page 3 of 5

The Jail's alleged failure to respond to the July 2007 grievance would make the exhaustion unavailable to plaintiff. The Seventh Circuit in *Brengettcy v. Horton* reached this conclusion when it held that a detainee was not required to bring an appeal after his original grievance was not answered within the required thirty day period by the Cook County Jail. 423 F.3d 674, 682 (7th Cir. 2005). *Brengettcy's* holding controls this point. The Jail's alleged failure to respond to the July 2007 grievance excused plaintiff from any further exhaustion requirement for purposes of the present summary judgment motion.

At this point, there is a factual dispute between the parties as to whether plaintiff brought the July 2007 grievance. Traditionally, this type of factual dispute would require the Court to hold a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve the swearing contest between the parties over the grievance's existence. However, this is not necessary because the grievance history that plaintiff alleges conclusively demonstrates that his case is untimely under the statute of limitations.

Plaintiff faces a two year statute of limitations and this period begins running when plaintiff knows that he was injured. *Draper v. Martin*, __ F.3d __, Nos. 10-2837, 10-3054, 2011 WL 6880357, at *2 (7th Cir. Dec. 30, 2011) (citing 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007); *Hilleman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004); *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)). The statute of limitations was tolled while plaintiff exhausted his grievances through the Cook County Jail grievance process. *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008) (citing *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001)).

Plaintiff claims that he was assaulted on July 26, 2007. He was in the hospital for two days and then filed a grievance when he returned to the Jail on July 29, 2007 (the contested grievance). Thus, there can be no dispute that he was aware of his claim by July 29, 2007, because he asserted the claim through the alleged grievance on that date.

The Court notes that the July 29th grievance is not in the record. As previously explained, this grievance was not located by the Jail and the Court only has plaintiff's assertion that he filed the grievance. The Court will use the July 2007 grievance for statute of limitations purposes because plaintiff is the one who asserts that he filed the grievance. The July 29th grievance is a double edged sword for plaintiff's case. It allows him to survive defendant's exhaustion defense for purposes of summary judgment, but it becomes the foundation of defendant's statute of limitations defense.

Plaintiff claims that he was participating in a grievance process from the July 29, 2007 filing of the first grievance through the completion of his second grievance on September 21, 2007. There is no additional grievance activity asserted by either party after September 21st. The Court notes that plaintiff's exhaustion argument would be based on the view that he no longer had to exhaust once the Jail failed to respond to the July 29th grievance within thirty days of the filing. This view would require holding that his exhaustion process ended on August 28, 2007. However, the Court will use the September 21, 2007 date because it is most favorable date to plaintiff and there is a factual dispute over whether the July 2007 grievance was filed.

Using the September 21, 2007 date (the most favorable date to plaintiff based on the information in the record), plaintiff had two years to submit his complaint. Plaintiff's complaint is dated June 13, 2010, more than two and half years later. (Dkt. No. 1 at 7). (Again, the Court is giving plaintiff the most beneficial date possible for the filing under the prison mailbox rule. *Houston v. Lack*, 487 U.S. 266 (1988)). But, this June 13th date cannot be used because plaintiff does not name Office Cribbs in this complaint, he sued a John Doe defendant. The complaint naming Officer Cribbs is dated July 21, 2010. (Dkt. No. 8 at 8). The Court

| STATEMENT |
|---|

must use this July 21, 2010 as the date plaintiff filed his complaint. *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) (citations omitted).

In summary, plaintiff's claim accrued on July 26, 2007 when he was stabbed. The limitations period was tolled until September 21, 2007 while he exhausted his grievances. He did not file his present complaint naming Cribbs until more than two and half years later on July 21, 2010. The case is untimely under the statute of limitations.

Plaintiff responds that his claim is timely under the continuing violation doctrine. (Dkt. No. 50 at 8). This doctrine has been applied to § 1983 cases, *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1027 (7th Cir. 2011) (citing *Hildenbrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003)), but is not applicable in this case. "The doctrine applies when 'a tort involves a continued repeated injury' and 'the limitation period does not begin until the date of the last injury or when the tortious act ceased.'" *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (quoting *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005)). The doctrine does not help plaintiff because the last and only alleged tort was Cribbs' failure to protect him from the assault on July 26, 2007.

Plaintiff also claims that statute of limitations period should not start until he was transferred to the Illinois Department of Corrections on July 15, 2009. (Dkt. No. 50 at 8). He claims that he was in protective custody between July 29, 2007 and December 23, 2007. (*Id.*). He also was transferred to the Jefferson County Jail where he claims there was a deficient law library. Plaintiff believes that this prevented him from understanding his claim until he reached the IDOC where he gained access to better law library materials and assistance from other prisoners.

Although he does not use the phrase equitable tolling, his arguments invoke this ground. "Equitable tolling of the statute of limitations 'permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing.'" *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 561 (7th Cir. 1996); *Singletary v. Cont'l Illinois Nat'l Bank and Tr. Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993)). Examples of equitable tolling include not being able to determine who caused the injury, inadequate notice or a pending motion for appointment of counsel. *Savory*, 469 F.3d at 673.

Plaintiff's equitable tolling arguments are unavailing. He was able to raise his claim via the internal grievance allegedly within a day of returning to the Cook County Jail from the hospital in July 2007. The information presented in the grievance (a short and plain statement of what happened to him) is more than sufficient to set forth his claim for relief. Plaintiff does not argue that he could not submit his complaint to this Court at that time. By September 2007, plaintiff was in a position to file his suit having completed the grievance process. All he had to do was recopy the information from his grievance on a complaint form and mail it to the Court. There is no reason why he could not do that. Ignorance or mistakes about the law is not a proper ground for equitable tolling. *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006). As the complaint is untimely, the Court will not hold a *Pavey* hearing on the exhaustion issue or reach the merits of the underlying deliberate indifference claim.

*Wm. J. Hibbler*  1/30/12